IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Defendants
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

MAINLAND HEADWEAR HOLDINGS, LTD.,  :  08 Civ. 2363 (RJS)
                                      ECF CASE
                                   :

                  Plaintiff,       :

       - against -                    ANSWER AND COUNTERCLAIMS
DREW PEARSON MARKETING, LLC and    :  <u>AND JURY DEMAND</u>
USPA ACCESSORIES LLC d/b/a
CONCEPT ONE,                       :

                  Defendants.  :

----------------------------------x

        Defendants DREW PEARSON MARKETING, LLC and USPA

ACCESSORIES LLC d/b/a CONCEPT ONE, by its undersigned attorney,

as and for their Answer and Counterclaims herein, alleges as

follows:

        1.   Deny knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph

1 of the Complaint.

        2.   Admit the allegations contained in Paragraph 2 of

the Complaint.

        3.   Admit the allegations contained in Paragraph 3 of

the Complaint.

4.    Paragraph 4 of the Complaint calls for a legal conclusion which, it is respectfully submitted, is for the court to determine and no further response is required.

5.    Admit the allegations contained in Paragraph 5 of the Complaint.

6.    Admit the allegations contained in Paragraph 6 of the Complaint.

7.    Admit the allegations contained in Paragraph 7 of the Complaint.

8.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

10.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.    Deny the allegations contained in Paragraph 12 of the Complaint, except admit negotiations for the sale of the Company.

2

13.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.   Admit the allegations contained in Paragraph 14 of the Complaint.

15.   With respect to the allegations contained in Paragraph 15 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

16.   With respect to the allegations contained in Paragraph 16 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

17.   With respect to the allegations contained in Paragraph 17 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

18.   With respect to the allegations contained in Paragraph 18 of the Complaint, admit that agreements were entered

into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

19.  With respect to the allegations contained in Paragraph 19 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

20.  With respect to the allegations contained in Paragraph 20 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

21.  With respect to the allegations contained in Paragraph 21 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

22.  With respect to the allegations contained in Paragraph 22 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full

and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

23.  With respect to the allegations contained in Paragraph 23 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

24.  With respect to the allegations contained in Paragraph 24 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

25.  Deny the allegations contained in Paragraph 25 of the Complaint, except admit that defendants submitted purchase orders in accordance with the agreement and received invoices.

26.  Deny the allegations contained in Paragraph 26 of the Complaint.

27.  Deny the allegations contained in Paragraph 27 of the Complaint.

28.  Deny the allegations contained in Paragraph 28 of the Complaint, except admit that the parties had oral and written communications during the relevant period.

29.  With respect to the allegations contained in Paragraph 29 of the Complaint, admit the purported notice and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

30.  Deny the allegations contained in Paragraph 30 of the Complaint, except admit that payments were made.

31.  Deny the allegations contained in Paragraph 31 of the Complaint, except admit that requests for product samples were submitted in accordance with the agreement and, with respect to referenced agreement, the court is respectfully referred thereto for its full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

32.  With respect to the allegations contained in Paragraph 32 of the Complaint, admit that requests for samples were submitted in accordance with the agreement and the court is respectfully referred thereto for the amount and effect thereof.

33.  Deny the allegations contained in Paragraph 33 of the Complaint, except admit that requests for samples were submitted in accordance with the agreement and the court is respectfully referred thereto for the amount and effect thereof.

34.  Deny the allegations contained in Paragraph 34 of the Complaint, except admit the purported notice and the court is

respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

35.    Deny the allegations contained in Paragraph 35 of the Complaint and, with respect to the referenced purported notice, the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

36.    Deny the allegations contained in Paragraph 36 of the Complaint, except admit that payments were made.

37.    Deny the allegations contained in Paragraph 37 of the Complaint.

38.    Deny the allegations contained in Paragraph 38 of the Complaint, except admit that payments were made.

39.    Deny the allegations contained in Paragraph 39 of the Complaint, except admit communications between the parties during the relevant period and the court is respectfully referred thereto for their full and complete content and legal effect.

40.    Deny the allegations contained in Paragraph 40 of the Complaint, except admit that defendants ceased submitting orders due to plaintiff's breaches.

41.   Deny knowledge or information with respect to the allegations contained in Paragraph 41 of the Complaint, except admit that products were shipped during the relevant period.

42.   Deny knowledge or information with respect to the allegations contained in Paragraph 42 of the Complaint.

43.   Deny the allegations contained in Paragraph 43 of the Complaint, except admit that products were shipped during the relevant period.

44.   Deny the allegations contained in Paragraph 44 of the Complaint.

45.   Deny the allegations contained in Paragraph 45 of the Complaint, except admit that defendants purchased product from other sources in accordance with their rights under the agreements and otherwise.

46.   Deny the allegations contained in Paragraph 46 of the Complaint.

47.   Deny the allegations contained in Paragraph 47 of the Complaint, except admit that defendants ceased submitting orders due to plaintiff's breaches and asserted claims as set forth in the Complaint in an action entitled USPA Accessories LLC d/b/a Concept One v. Mainland Headear Holdings, Ltd., bearing Index No. 08 Civ. 2155 (RJS).

48.   Deny the allegations contained in Paragraph 48 of the Complaint, except admit communications between the parties

during the relevant period and the court is respectfully referred thereto for its full and complete content and legal effect.

49.  Deny the allegations contained in Paragraph 49 of the Complaint, except admit communications between the parties during the relevant period and the court is respectfully referred thereto for its full and complete content and legal effect.

50.  Deny the allegations contained in Paragraph 50 of the Complaint, except admit inquiries with respect to plaintiff's compliance with the agreement to which the court is respectfully referred for their full and complete content and legal effect.

51.  Deny the allegations contained in Paragraph 51 of the Complaint, except admit the communication between the parties and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

52.  Deny the allegations contained in Paragraph 52 of the Complaint, except admit the communication between the parties and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

53.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint.

54.   Deny the allegations contained in Paragraph 54 of the Complaint, except admit the agreement to which the court is respectfully referred for its full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

55.   Deny the allegations contained in Paragraph 55 of the Complaint, except admit the communication between the parties and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

56.   Deny the allegations contained in Paragraph 56 of the Complaint, except admit the communication between the parties and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

57.   Deny the allegations contained in Paragraph 57 of the Complaint.

58.   Deny the allegations contained in Paragraph 58 of the Complaint.

59.   Deny the allegations contained in Paragraph 59 of the Complaint.

60.   Deny the allegations contained in Paragraph 60 of the Complaint, except admit the communication between the parties

and the court is respectfully referred thereto for its full and complete content and legal effect and, because the legal effect thereof is a matter for the court to determine, no further response is required.

61. With respect to the allegations contained in Paragraph 61 of the Complaint, admit the agreements to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

62. Deny the allegations contained in Paragraph 62 of the Complaint.

63. Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 62 above, as if fully set forth herein.

64. Deny the allegations contained in Paragraph 64 of the Complaint.

65. Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 64 above, as if fully set forth herein.

66. Deny the allegations contained in Paragraph 66 of the Complaint, except admit that invoices were submitted to which the Court is respectfully referred for their full and complete content and legal effect.

67. Deny the allegations contained in Paragraph 67 of the Complaint.

68.   Deny the allegations contained in Paragraph 68 of the Complaint.

69.   Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 68 above, as if fully set forth herein.

70.   Deny the allegations contained in Paragraph 70 of the Complaint.

71.   Deny the allegations contained in Paragraph 71 of the Complaint.

72.   Deny the allegations contained in Paragraph 72 of the Complaint.

73.   Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 72 above, as if fully set forth herein.

74.   Deny the allegations contained in Paragraph 74 of the Complaint.

75.   Deny the allegations contained in Paragraph 75 of the Complaint.

76.   Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 72 [sic] above, as if fully set forth herein.

77.   Deny the allegations contained in Paragraph 77 of the Complaint.

78.   Deny the allegations contained in Paragraph 78 of the Complaint.

79.  Deny the allegations contained in Paragraph 79 of the Complaint.

80.  Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 79 above, as if fully set forth herein.

81.  With respect to the allegations contained in Paragraph 81 of the Complaint, admit that agreements were entered into to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

82.  Deny the allegations contained in Paragraph 82 of the Complaint.

83.  Deny the allegations contained in Paragraph 83 of the Complaint.

84.  Defendants repeat and reallege each of the allegations set forth in Paragraphs 1 through 75 [sic] above, as if fully set forth herein.

85.  With respect to the allegations contained in Paragraph 85 of the Complaint, admit that plaintiff agreed to certain restrictive covenants to which the court is respectfully referred for their full and complete content and, because the legal effect thereof is a matter for the court to determine, no further response is required.

86.   Deny the allegations contained in Paragraph 86 of the Complaint.

87.   Deny the allegations contained in Paragraph 87 of the Complaint.

88.   Deny the allegations contained in Paragraph 88 of the Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

89.   The Complaint fails, in whole or in part, to state a claim.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

90.   Plaintiff has failed to perform its obligations under the agreements between the parties.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

91.   Plaintiff's continuation with the agreements despite defendants' alleged breaches constitutes an election of remedies which precludes a claim that any such breaches excuse plaintiff's failure to perform.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

92.   Plaintiff committed an anticipatory breach and/or repudiation of the parties' agreements.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

93.  Plaintiff's goods delivered or tendered failed to conform; were not accepted by defendant; were rejected by defendant as non-conforming; if plaintiff's non-conforming goods were accepted and not rejected, defendant revoked its acceptance; and/or plaintiff failed to notify defendants of its intent to cure and make a conforming delivery or tender.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

94.  Plaintiff's claims are, in whole or in part, precluded by the doctrine of waiver and estoppel.

### AS AND FOR AN SEVENTH AFFIRMATIVE DEFENSE

95.  Plaintiff's claims are, in whole or in part, precluded by the doctrine of unclean hands.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

96.  Plaintiff has failed to mitigate damages.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

97.  Defendants' claims and counterclaims exceed the amounts to which plaintiff is entitled and/or entitle defendants to a set-off.

### AS AND FOR A FIRST AND SECOND COUNTERCLAIM
(Breach of Contract and Declaratory Judgment)

98.  Defendants repeat and reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

15

99.   In an action entitled <u>USPA Accessories LLC d/b/a Concept One v. Mainland Headear Holdings, Ltd.</u>, bearing Index No. 08 Civ. 2155 (RJS), defendant has set forth claims which, by agreement of counsel, are hereby incorporated by reference.   A copy of the Complaint (without exhibits) is attached hereto as Appendix A.

### AS AND FOR A THIRD COUNTERCLAIM
(Declaratory Judgment)

100. Defendants repeat and reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

101. On or about December 11 2006, the parties entered into an Asset Purchase Agreement (the "Agreement").

102. In the Agreement, plaintiff covenanted, <u>inter alia</u>, that for a period of seven years following the Closing Date (as therein defined), neither the Selling Parties (as therein defined) nor any of their affiliates, including plaintiff, shall, on their behalf or on behalf of any other individual or entity, directly or indirectly, in any capacity whatsoever, carry on or engage in, or have any financial or other interest in, or be commercially involved in any endeavor, activity or business which is the same or in competition with the Business (as therein defined) in the United States as currently conducted or proposed to be conducted, or that sells directly to any retailers located

within the United States, or that solicits or sells to any such
retailer directly.

103. In the Agreement, plaintiff covenanted, _inter_
_alia_, that for a period of seven years following the Closing Date
(as therein defined), the Selling Parties (as therein defined)
and their affiliates, including plaintiff, shall not, on their
behalf or on behalf of any other individual or entity, directly
or indirectly, in regards to products competitive with those of
the Business (as therein defined) as currently conducted or
proposed to be conducted: (i) canvass or solicit the business of
(or procure or assist the canvassing or soliciting of the
business of) any customer of the Business; (ii) accept (or
procure or assist the acceptance of) any business of any customer
of the Business; or (iii) supply (or procure or assist the supply
of) any goods or services to any customer of the Business.

104. In the Agreement, plaintiff further covenanted,
_inter alia_, that for a period of seven years following the
Closing Date (as therein defined), the Selling Parties (as
therein defined) and their affiliates, including plaintiff, shall
not, on their behalf or on behalf of any other individual or
entity, directly or indirectly, in any capacity whatsoever: (i)
solicit the employment or engagement of or otherwise entice away
from the employment of the Business any individual who is
employed by the Business, whether or not such individual would
commit any breach of his or her contract or terms of employment

17

by reason of leaving the employ of the Buyer (as therein defined); or (ii) procure or assist any individual or entity to solicit the employment or engagement of or otherwise entice away from the employment of the Business any individual who is employed by the Business, whether or not such individual would commit any breach of his or her contract or terms of employment by reason of leaving the Business.

106. 105. Defendants performed all obligations of the Agreement and all other pertinent agreements between the parties, if any, on their part to be performed.

106. An actual controversy and dispute exists between the parties with respect to the above covenants.

107. Defendants have no adequate remedy at law.

108. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, defendants are entitled to a declaration that the above covenants are valid and in full force and effect.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Injunction)

109. Defendants repeat and reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

110. Defendants will suffer irreparable harm in the event of a breach by plaintiff of the above covenants.

111. Accordingly, defendants are entitled to an injunction enjoining plaintiff, its agents, officers, directors,

employees, affiliates and any persons acting on its behalf, from violating and/or breaching the above covenants.

WHEREFORE, defendants demand judgment dismissing the Complaint herein and, on the Counterclaims, awarding damages in an amount to be determined at trial but in all events not less than $5,500,0000; entering a judgment declaring the covenants to be valid and in full force and effect; enjoining plaintiff, its agents, officers, directors, employees, affiliates and any persons acting on its behalf, from violating and/or breaching the above covenants; together with the costs and disbursements of this action; and for such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
       May 16, 2008


_____/s/_____
IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Defendants
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250


Answer.wpd

<u>JURY DEMAND</u>

Defendants demand trial by jury on all claims properly triable by a jury.

Dated:  New York, New York
        May 16, 2008

                                    _____/s/_____
                                    IRA DANIEL TOKAYER, ESQ. (IT-4734)
                                    Attorney for Defendants
                                    42 West 38th Street, Suite 802
                                    New York, New York 10018
                                    (212) 695-5250

20

IRA DANIEL TOKAYER, ESQ. (IT4734)
Attorney for Plaintiff
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

USPA ACCESSORIES LLC d/b/a          :    08 Civ. 2155 (RJS)
CONCEPT ONE,                             ECF CASE
                                    :
            Plaintiff,
                                    :
      - against -                        COMPLAINT AND JURY DEMAND
                                    :
MAINLAND HEADWEAR HOLDINGS,
LTD.,                               :

            Defendant.    :
----------------------------------x

      Plaintiff, USPA Accessories LLC d/b/a Concept One, by

its attorney, Ira Daniel Tokayer, Esq., as and for its Complaint

herein, alleges as follows:

THE PARTIES

      1.   Plaintiff USPA Accessories LLC d/b/a Concept One

("Concept One" or "Plaintiff") is a limited liability company

organized and existing under the laws of the State of New York,

with an office for the conduct of business at 521 Fifth Avenue,

New York, New York.  Plaintiff is engaged in the business of

designing, creating, importing, selling, distributing and

promoting, among other products, caps, hats, accessories, and

various related products (the "Products").

2. Plaintiff sells Products to department stores and other retail outlets, including but not limited to Wal Mart, K Mart, Target, J.C. Penney and Sears Roebuck.

3. Upon information and belief, Defendant Mainland Headwear Holdings Limited ("Mainland" or "Defendant") is a public company organized and existing under the laws of Bermuda with its principal place of business in Hong Kong. Upon information and belief, Defendant is engaged in the business of manufacturing Products.

<u>JURISDICTION AND VENUE</u>

4. This court has original jurisdiction over this civil action pursuant to 28 U.S.C § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

5. Pursuant to 28 U.S.C § 1391(a), venue is proper in this judicial district by agreement of the parties and because a substantial part of the events giving rise to the claim occurred in this district, defendant is subject to personal jurisdiction in this district and there is no district in which the action may otherwise be brought.

<u>THE AGREEMENT</u>

6.    On or about December 29, 2006, Plaintiff and Defendant entered into a Manufacturing Agreement, a copy of which is attached as Exhibit A (the "Agreement").

7.    The Agreement is scheduled to terminate on or about April 30, 2014.

8.    The purpose of the Agreement was, <u>inter alia</u>, to assure Plaintiff of a reliable source of quality Products and a manufacturing facility dedicated exclusively to the timely manufacture of Products in a manner that conformed to quality and performance standards and which fully complied with all applicable laws, regulations and industry standards.

9.    In reliance on Defendant's performance under the Agreement, Plaintiff has discontinued doing business with other manufacturers so as to dedicate production to Defendant.

A.    <u>Quality and Performance Standards</u>

10.    Defendant's compliance with quality and performance standards is an essential condition to Plaintiff's agreement to devote a substantial portion of its production to Defendant as provided in the Agreement and to Plaintiff's obligation to perform thereunder.

11.    Paragraph 9(a) of the Agreement provides that Defendant "acknowledges that [Plaintiff is] relying upon a high level of quality and service in the development, manufacturing

-3-

and delivery of the Products.  As an essential condition to the dedication by [Plaintiff] of a majority of their respective production to [Defendant], as contemplated by Section 8 of this Agreement, it is incumbent upon [Defendant] to maintain those standards."  That section further provides that "[i]n order to avoid any misunderstanding, Defendant acknowledges that it will assume at least the quality obligations set forth in this Section 9."

12.  Section 9(b) of the Agreement provides that, within ten (10) Business Days after receipt of technical sheets, Defendant is required to produce Development Samples, which must "follow the details regarding color, shape, specs and application set forth in the sheets as closely as possible."  In addition, under Section 4(a) of the Agreement, the Development Samples must also meet the specifications of any artworks and/or reference samples that may be supplied by Plaintiff to Defendant.

13.  Section 9(b) of the Agreement requires that, within ten (10) business days after receipt of an order therefor, Defendant must produce and ship Sales Samples that "reflect any comments and corrections previously made" by Plaintiff.  Sales Samples are an indispensable sales tool for Plaintiff to present models of Products to customers to procure orders.

14.   Section 4(c) of the Agreement provides that Defendant shall sign and return Purchase Orders placed by Plaintiff within two (2) Business Days.

15.   Section 5 of the Agreement provides that Defendant shall manufacture or arrange for the manufacture and supply of Products in accordance with the terms of the Purchase Orders.

16.   Section 5 further provides that Defendant shall deliver Products according to the Ship By Date specified in each Purchase Order.  In Section 9, Defendant acknowledged that on-time delivery on the dates set forth in the Purchase Orders is "critical to the success of the commercial activities associated with this Agreement."

17.   Section 9(d) of the Agreement provides that Defendant "represents, warrants and agrees that the Products shall conform to the specifications set forth in the relevant technical sheets attached to the Purchase Orders and to the approved Development Samples."

18.   Section 9(d) provides that Defendant "represents, warrants and agrees that all of the Products to be supplied by [Defendant] to [Plaintiff] shall be made and delivered in accordance with [Defendant's] Purchase Orders and will be free from any material defects in material or workmanship."

19.   Section 9(d) further provides that there shall be "no substitution, variation or divergence from any order, except with [Plaintiff's] prior express written approval."

20.   In accordance with standard industry practice, Defendant must supply Plaintiff with a Production Sample before Defendant runs mass production of any order to verify Defendant's compliance with quality standards.  The finished Products must conform to the corresponding Production Samples.

B.   The Dedicated Facility

21.   The Agreement requires Defendant to establish a facility dedicated exclusively to the manufacture of Plaintiff's Products which complied with specified privacy and production exclusivity criteria.

22.   The privacy and production exclusivity criteria were set forth in Exhibit B to the Agreement and included the requirements that:

▪ the dedicated facility have a separate entrance and be restricted to workers and staff working exclusively on the Products manufactured for Plaintiff except for certain management and supporting staff and that access by any other production staff, merchandiser, or customer of Defendant is prohibited;

-6-

- the dedicated facility have separate departments handling each of the following functions exclusively for Plaintiff:

  - Design

  - Sample Making

  - Cutting

  - Embroidery

  - Sewing

- the dedicated facility include two show rooms with fabric library and application library; and

- the dedicated facility include office space for two quality controllers of Plaintiff to be stationed in the facility with full access to all areas of the facility at all times when production is running.

23.  When negotiating the Agreement, the parties contemplated that a permanent dedicated facility would be established in Panyu, China.  However, Defendant was unable to obtain the required building permits from the Chinese authorities.

24.  Accordingly, Section 12(a) of the Agreement required that Defendant within twelve (12) months of the Agreement's Effective Date, i.e., December 29, 2006, build a

temporary separate manufacturing facility (the "Interim Dedicated Facility") adjacent to Defendant's facility in Shenzhen, China.

25.   Under Section 12(a) of the Agreement, the Interim Dedicated Facility was required to comply with the same privacy and production exclusivity criteria required with respect to the permanent dedicated facility and plaintiff's agreement to use the Interim Dedicated Facility was expressly conditioned thereon.

26.   Under the Agreement, the failure to build an Interim Dedicated Facility in compliance with the provisions of Exhibit B is a material breach of the Agreement and, in such event, Plaintiff has the right to terminate the Agreement upon written notice.

C.   Labor and Human Rights Standards

27.   Section 12(d) of the Agreement requires Defendant to be fully responsible for compliance with all local laws and regulations applicable to Defendant's operations at facilities involved in the manufacture of Plaintiff's Products, including but not limited to laws regarding workers' rights, occupational health, minimum wages, employment discrimination, child or forced labor and civil rights.

28.   Section 12(d) further requires that Defendant comply with any widely acceptable industry or other operational standard that may generally apply to Defendant's manufacturing

operations and, if any such standard is stricter than the requirements of applicable law, such standard shall control.

29.   In addition, Section 12(d) provides that Defendant "shall not take any action that may detract from the goodwill, prestige and reputation of [Plaintiff] and the Products, and [Defendant] shall promptly take such steps as may be requested by [Plaintiff] to insure compliance with the provisions of this Agreement."

30.   In addition, Section 12(c) of the Agreement provides that Defendant must ensure that its manufacturing facilities pass any factory audit requirements of customers and/or licensors of Plaintiff who also require that manufacturers meet the above-referenced standards.

D.   The Pricing Structure

31.   Section 6(a) of the Agreement provides that the FOB China price for Products shall be based on an initial formula set forth in Exhibit A-1 to the Agreement based on a baseline "Blank Cap Pricing," with surcharges for applications and other finishing costs.  Section 6(a) further provides that Defendant may not increase its prices by more than a maximum of 5% per year to reflect possible increases in the relative cost of labor or materials used in connection with the manufacture of Products and for currency fluctuations.

<u>THE BREACHES</u>

32.    From the onset of the relationship between the parties, Defendant has continuously, consistently and willfully materially breached and repudiated its contractual obligations set forth above.

A.    <u>Quality and Performance Standards</u>

33.    Defendant continuously, consistently and willfully materially breached its obligation to produce quality Development Samples and Sales Samples in accordance with Plaintiff's specifications in a timely manner as required by the Agreement.

34.    Defendant's performance was so deficient that Plaintiff was forced to procure samples from two separate vendors ("double sample") to protect its reputation in the event that compliant samples were not produced on time by Defendant.

35.    Plaintiff repeatedly notified Defendant of the above deficiencies and demanded that Plaintiff take corrective action.  In response, Defendant acknowledged that it was incapable of complying with its obligations under the Agreement and otherwise failed to remedy such deficiencies.

36.    The Defendant's breach caused severe prejudice to the Plaintiff's goodwill and standing with its customers and its ability to generate sales of Products.  By way of illustration, entire selling programs, such as a boys' program proposed to be

launched by Target, were endangered by Defendant's failure to comply with its obligations relating to samples.

37.  The quality of Products manufactured by Defendant also consistently and continuously failed to comply with the standards of the Agreement and customary industry standards.

38.  As a result of the above failures, Products manufactured by the Defendant were rejected or otherwise subject to complaints by many of Plaintiff's largest customers, including J.C. Penney and Target, damaging Plaintiff's goodwill and standing with its customers with respect not only to its headwear business, but with respect to other products sold by Plaintiff, including but not limited to backpacks, gloves and umbrellas.

39.  By way of example, retail customers such as Target threatened to terminate Plaintiff's status as an approved vendor and Kohl's rejected goods that Defendant made with the wrong color.  In addition, licensors of Plaintiff rejected products made by the Defendant as non-compliant.

40.  In addition, Defendant has, from the onset of the Agreeement, been completely unable to produce knit Products (other than knits made of 100% acrylic), which comprise approximately 40% of the Products sales of Plaintiff for 2007.

41.  In order to mitigate the damage caused by the Defendant's inability to produce knits, Plaintiff has consistently "double sourced" samples of knits with other makers,

expending considerable amounts to source hundreds of samples of knits from manufacturers other than Plaintiff.

42.   Defendant was repeatedly put on notice of its quality and performance failures and their impact on Plaintiff's business.   Nevertheless, Defendant's continuous, consistent and willful material breaches were never corrected.

B.   The Dedicated Facility

43.   Defendant did not build a temporary separate manufacturing facility (the "Interim Dedicated Facility") adjacent to Defendant's facility in Shenzhen, China, on or before December 29, 2007.

C.   Labor and Human Rights Standards

44.   Defendant has been assessed violations in connection with, and/or failed, audits conducted by or on behalf of Plaintiff's licensors, Plaintiff's customers and by Plaintiff.

45.   By way of illustration and not limitation, Defendant failed an audit conducted by Plaintiff's licensor for Levis products, by licensors of Disney and Hasbro products, by Wal-Mart and by K-Mart.

46.   Sears Roebuck has sent Plaintiff a "Notice of Factory Termination," stating that Defendant had been audited "on such important issues as wages, benefits, working hours, safety and factory security."   The Notice concluded that "due to [Defendant's] inability to meet expected minimum standards within

-12-

three consecutive audits, effective immediately, SHC will not permit this facility to be used in the production of Sears and Kmart merchandise."

47.    The Fair Labor Organization, a non-profit organization dedicated to ending sweatshop conditions in factories worldwide and building solutions to abusive labor conditions, found that Defendant's facilities did not meet minimal labor and human rights standards.

48.    An investigation for the 2008 Beijing Olympics found extensive labor violations at Defendant's facilities, ranging from making employees work more than 13 hours a day, seven days a week, underpaying them by giving less than $3 a day (less than 50% minimum wage) and using workers as young as 12 years old.

49.    Defendant has also been found to have falsified records in an apparent effort to cover-up violations.

50.    Several customers and licensors of Plaintiff, including the National Basketball Association, have notified Plaintiff that findings made against Defendant were inconsistent with their public image and commitment to fair trade.

D.    The Pricing Structure

51.    Defendant has violated the Agreement by charging prices substantially higher than the Pricing Formula set forth in

-13-

Exhibit A-1 to the Agreement, further depriving Plaintiff of its legitimate expectations under the Agreement.

### AS AND FOR A FIRST CLAIM

52.   Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

53.   Plaintiff and Defendant entered into an agreement.

54.   Plaintiff has performed all the obligations of the agreement on its part to be performed.

55.   Defendant has breached the agreement.

56.   By reason of the foregoing, Plaintiff has been damaged.

### AS AND FOR A SECOND CLAIM

57.   Defendant repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

58.   An actual controversy and dispute exists between the parties with respect to the Agreement which, on or about March 3, 2008, Defendant terminated.

59.   Defendant has no adequate remedy at law.

60.   Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, Defendant is entitled to a declaration of the legal rights and other legal relationship of the parties including a

declaration that the Agreement is null and void and no longer in force and effect.

WHEREFORE, Plaintiff respectfully requests that the Court enter Judgment in favor of Plaintiff and against Defendant: (i) in an amount to be determined at trial but in all events not less than $5,500,000; (ii) a declaratory judgment that the Agreement is null and void and no longer in force and effect; (iii) the costs and disbursements of this action; and (iv) for such other and further relief as to this Court may seem just and proper.

Dated:  New York, New York
        March 4, 2008

                            _____/s/_____
                            IRA DANIEL TOKAYER, ESQ. (IT4734)
                            Attorney for Plaintiff
                            42 West 38th Street, Suite 802
                            New York, New York 10018
                            (212) 695-5250

<u>JURY DEMAND</u>

Plaintiff demands trial by jury on all claims properly triable by a jury.

Dated:  New York, New York
        March 4, 2008


                    _____/s/_____
                    IRA DANIEL TOKAYER, ESQ. (IT4734)
                    Attorney for Plaintiff
                    42 West 38th Street, Suite 802
                    New York, New York 10018
                    (212) 695-5250

-16-