UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

MAINLAND HEADWEAR HOLDINGS,
LTD.,                                                                    :

                                   Plaintiff,               :        Case No. 08CV02363 (RJS)

              -against-                                     :

DREW PEARSON MARKETING, LLC            :
and USPA ACCESSORIES LLC d/b/a
CONCEPT ONE,                                          :        **REPLY TO COUNTERCLAIMS**

                                   Defendants.          :

_____X


          Plaintiff-Counterclaim Defendant Mainland Headwear Holdings, Ltd. ("Plaintiff"), by its

attorneys Wormser, Kiely, Galef & Jacobs LLP and Bell, Boyd & Lloyd LLP, for its Reply to

Counterclaims contained in the Answer of Drew Pearson Marketing, LLC ("DPM") and USPA

Accessories LLC d/b/a Concept One ("CO", and collectively with DPM, "Defendants"),

respectfully alleges as follows:

### AS AND FOR A FIRST AND SECOND COUNTERCLAIM
(Breach of Contract and Declaratory Judgment)

          1.          Paragraph 98 of Defendants' Answer repeats and realleges prior paragraphs

contained therein and does not require a response by Plaintiff.

          2.          In response to Paragraph 99 of the Answer, Plaintiff Mainland avers that it has

served and filed an Answer, dated May 16, 2008,  in an action entitled USPA Accessories LLC

d/b/a Concept One v. Mainland Headwear Holdings, Ltd. (08cv2155 (RJS)), and hereby

incorporates by reference the Answer in its entirety.  A copy of the Answer (without exhibits) is

attached hereto as Exhibit A.

## AS AND FOR A THIRD COUNTERCLAIM
(Declaratory Judgment)

3.      In response to Paragraph 100 of the Answer, Plaintiff repeats and realleges its responses to the allegations in the preceding paragraphs as if fully set forth herein.

4.      Admits the allegations contained in Paragraph 101 of the Answer.

5.      Admits that Paragraph 102 of the Answer purports to paraphrase a portion of Article 6.2 of the Asset Purchase Agreement entered into among the parties thereto, but avers that the provisions of Article 6.2 of the Asset Purchase Agreement are not enforceable as they are an unreasonable restraint on trade; avers that the geographic limitation of the scope of the covenants contained in Article 6.2 of the Asset Purchase Agreement is not sufficiently narrow for them to be enforceable; avers that the duration of the covenants contained in Article 6.2 of the Asset Purchase Agreement is too long for them to be enforceable; and avers that Defendants' breach of, and purported termination of the Manufacturing Agreement entered into on or about December 29, 2006 (the "Manufacturing Agreement") constitutes a failure of the consideration proffered in exchange for Plaintiff's agreement to conform to the provisions of Article 6.2 of the Asset Purchase Agreement, thereby excusing Plaintiff's performance and rendering such provisions unenforceable.

6.      Admits that Paragraph 103 of the Answer purports to paraphrase Article 6.3 of the Asset Purchase Agreement entered into among the parties thereto, but avers that the provisions of Article 6.3 of the Asset Purchase Agreement are not enforceable as they are an unreasonable restraint on trade; avers that Article 6.3 contains no geographical limitation in scope and therefore the provisions therein are unenforceable; avers that the duration of the covenants contained in Article 6.2 of the Asset Purchase Agreement is too long for them to be enforceable;

and avers that Defendants' breach of, and purported termination of, the Manufacturing Agreement constitutes a failure of the consideration proffered in exchange for Plaintiff's agreement to conform to the provisions of Article 6.3 of the Asset Purchase Agreement, thereby excusing Plaintiff's performance and rendering such provisions unenforceable.

7.      Admits that Paragraph 104 of the Answer purports to paraphrase a portion of Article 6.4 of the Asset Purchase Agreement entered into among the parties thereto, but avers that the provisions of Article 6.4 of the Asset Purchase Agreement are not enforceable as they are an unreasonable restraint on trade; avers that Article 6.4 contains no geographical limitation in scope and therefore the provisions therein are unenforceable; avers that the duration of the covenants contained in Article 6.2 of the Asset Purchase Agreement is too long for them to be enforceable; and avers that Defendants' breach of, and purported termination of, the Manufacturing Agreement constitutes a failure of the consideration proffered in exchange for Plaintiff's agreement to conform to the provisions of Article 6.4 of the Asset Purchase Agreement, thereby excusing Plaintiff's performance and rendering such provisions unenforceable.

8.      Denies the allegations set forth in Paragraph 105 of the Answer.

9.      Admits the allegations set forth in Paragraph 106 of the Answer.

10.     Denies the allegations set forth in Paragraph 107 of the Answer, except avers that Paragraph 107 contains a legal conclusion to which a responsive pleading is not required.

11.     Denies the allegations set forth in Paragraph 108 of the Answer, except avers that Paragraph 108 contains legal conclusions to which a responsive pleading is not required.

## AS AND FOR A FOURTH COUNTERCLAIM
(Injunction)

12.     In response to Paragraph 109 of the Answer, Plaintiff repeats and realleges its responses to the allegations in the preceding paragraphs as if fully set forth herein.

13.     Denies the allegations set forth in Paragraph 110 of the Answer, but avers that Paragraph 110 contains legal conclusions to which a responsive pleading is not required, and avers that the covenants contained in the Asset Purchase Agreement are unenforceable as a matter of law because they are an unreasonable restraint on trade; there is no, or there is an insufficient, limitation on the geographical scope of the covenants, thereby rendering them unenforceable; the duration of the covenants is too long for them to be enforceable; and Defendants' breach of, and purported termination of, the Manufacturing Agreement constitutes a failure of the consideration proffered in exchange for Plaintiff's agreement to conform to covenants, thereby excusing Plaintiff's performance and rendering such provisions unenforceable.

14.     Denies the allegations set forth in Paragraph 111 of the Answer, but avers that Paragraph 111 contains legal conclusions to which a responsive pleading is not required, and avers that the covenants contained in the Asset Purchase Agreement are unenforceable as a matter of law because they are an unreasonable restraint on trade; there is no, or there is an insufficient, limitation on the geographical scope of the covenants, thereby rendering them unenforceable; the duration of the covenants is too long for them to be enforceable; and/or Defendants' breach of, and purported termination of, the Manufacturing Agreement constitutes a failure of the consideration proffered in exchange for Plaintiff's agreement to conform to the

covenants, thereby excusing Plaintiff's performance and rendering such provisions unenforceable.

## FIRST ADDITIONAL DEFENSE

15.     In consideration of Defendants' agreement to certain provisions of the Manufacturing Agreement, including without limitation, the specified Minimum Purchase Commitments set forth therein, Plaintiff agreed to the restrictive covenants contained in Articles 6.2, 6.3 and 6.4 of the Manufacturing Agreement.  Defendants, however, have breached the Manufacturing Agreement, including without limitation failing to purchase anywhere near the amount specified in Article 8 of the Manufacturing Agreement as the Minimum Purchase Commitments and, further, Defendants have purported to terminate the Manufacturing Agreement.  Defendants' breach of, and termination of, the Manufacturing Agreement constitute a failure of the consideration proffered in exchange for Plaintiff's agreement to comply with the covenants set forth in Articles 6.2, 6.3 and 6.4 of the Manufacturing Agreement, thereby excusing Plaintiff's performance and/or rendering those covenants unenforceable.

## SECOND ADDITIONAL DEFENSE

16.     Only Article 6.2 of the Asset Purchase Agreement contains any geographic constraint on the scope of the covenants, and that geographic constraint broadly prohibits Plaintiff's ability to form or invest in any entity competitive with Defendants anywhere in the United States.  Articles 6.3 and 6.4 of the Asset Purchase Agreement do not contain any geographic limitation in scope.

17.     The lack of geographic limitation in Articles 6.3 and 6.4 and the broad geographic scope of Article 6.2 cause these covenants to be unreasonable restraints on trade and unenforceable as a matter of law.

### THIRD ADDITIONAL DEFENSE

18.    Articles 6.2, 6.3, and 6.4 of the Asset Purchase Agreement require Plaintiff to comply with the covenants for a period of seven (7) years following the "Closing Date" (as that term is defined in the Asset Purchase Agreement).  In absence of Defendants' performance under the Manufacturing Agreement, this duration is an unreasonable restraint on trade and is unenforceable as a matter of law.

### FOURTH ADDITIONAL DEFENSE

19.    Defendants have breached and terminated the Manufacturing Agreement, and therefore have terminated a source of hundreds of millions of dollars of anticipated revenue to Mainland through April 30, 2014.  Given this breach and termination by Defendants, the lack of sufficient limitations on the geographic scope of the covenants, and that the covenants purport to restrict Plaintiff's ability to conduct its business, including without limitation the hiring of employees, soliciting and obtaining orders from potential customers and satisfying orders from other entities, the enforcement of the covenants contained in the Asset Purchase Agreement would be an unreasonable restraint on Plaintiff's ability to conduct its business while providing a windfall to Defendants.

WHEREFORE, Plaintiff Mainland Headwear Holdings, Ltd. demands that the Counterclaims be dismissed in their entirety with attorneys' fees and costs awarded to it along

with such and further relief as the Court deems proper.

Dated: New York, New York
       June 5, 2008

                    WORMSER, KIELY, GALEF & JACOBS LLP
                    Attorneys for Plaintiff-Counterclaim Defendant


By: _____/S/_____
           John T. Morin (JM0390)
           Jennifer Marlborough (JM4303)
           825 Third Avenue
           New York, New York 10022
           (212) 687-4900

           Of Counsel
           Bell, Boyd & Lloyd, LLP
           70 W. Madison Street – Suite 3100
           Chicago, Illinois 60602
           (312) 372-1121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

USPA ACCESSORIES LLC d/b/a
CONCEPT ONE,                                  :

                      Plaintiff,        :        08 Civ. 2155 (RJS)
                                  ECF CASE

     -against-                             :

MAINLAND HEADWEAR HOLDINGS       :        __ANSWER__
LTD.,
                                   :

                  Defendant.         :

_____X

      Defendant Mainland Headwear Holdings, Ltd. ("Mainland"), by its attorneys

Wormser, Kiely, Galef & Jacobs LLP and Bell Boyd & Lloyd LLP, for its Answer to the

Complaint of USPA Accessories LLC d/b/a Concept One ("Concept One" or "Plaintiff"):

      1.      Admits, upon information and belief, the allegations contained in

Paragraph 1 of the Complaint, except denies knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations concerning the office address of

Concept One.

      2.      Admits, upon information and belief, the allegations contained in

Paragraph 2 of the Complaint.

      3.      Admits the allegations contained in Paragraph 3 of the Complaint.

<u>JURISDICTION AND VENUE</u>

      4.      Admits it is a citizen of a foreign State; admits, upon information and

belief, that Plaintiff is a citizen of a State; admits that Plaintiff alleges that the matter in

controversy exceeds $75,000; and avers that the question whether the Court has jurisdiction pursuant to 28 U.S.C. 1332(a) is a question of law.

5.    Denies the allegations contained in Paragraph 5 of the Complaint, except admits that it assented and submitted to the personal jurisdiction and venue of this Court pursuant to the Manufacturing Agreement annexed to the Complaint as Exhibit A.

<u>THE AGREEMENT</u>

6.    Admits the allegations contained in Paragraph 6 of the Complaint, except avers that Drew Pearson Marketing, LLC (DPM LLC"), a New York limited liability company, was also a party to the Manufacturing Agreement, and further avers that on or about December 11, 2006, DPM LLC, Mainland, Great Champion International Co., Ltd. ("Great Champion"), Drew Pearson Marketing Inc. ("DPM Inc.") and Plaintiff entered into an Asset Purchase Agreement ("APA") pursuant to which, among other things: Great Champion sold substantially all of the assets of DPM Inc. to DPM LLC; DPM LLC assumed certain of the liabilities of DPM Inc.; and Concept One guaranteed the full and timely performance of DPM LLC's obligations under both the APA and the Manufacturing Agreement.  The Manufacturing Agreement and the APA are integral to one another, and they both provide consideration to Mainland for entering into the Manufacturing Agreement.

A copy of the APA and a separate Guaranty, concurrently executed by Concept One ("Guaranty"), are annexed collectively hereto as Exhibit 1.  Concept One and DPM LLC are, from time to time, referred to collectively as "Buyers".

7.    Admits the allegations in Paragraph 7 of the Complaint, and avers that Section 8 of the Manufacturing Agreement -- "Buyers' Minimum Purchase

Commitment" – provides, among other things, that DPM LLC and Concept One will purchase at least a specified minimum amount of "Products" from Mainland in seven (7) "Annual Periods", the last of which extends from May 1, 2013 through April 30, 2014.

8.     Denies the allegations contained in Paragraph 8 of the Complaint, and refers to the Manufacturing Agreement, the APA, and the Guaranty for their complete terms and conditions.

9.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the Complaint.

A.  Quality and Performance

10.     Denies the allegations contained in Paragraph 10 of the Complaint, except avers that Paragraph 10 asserts a legal conclusion with respect to which no responsive pleading is required, and refers to the Manufacturing Agreement, the APA and the Guaranty for the complete terms and conditions of the transactions among the parties.

11.     Admits that Paragraph 11 of the Complaint accurately quotes a limited portion of Section 9(a) of the Manufacturing Agreement, refers to Section 9(a) of the Manufacturing Agreement for its complete terms and conditions, and avers that Section 9(a) specifies, among other things, that the "Buyers" (defined in the Manufacturing Agreement as Concept One, DPM LLC, East Asia, Ltd., and any other affiliate of Concept One that may place orders for Products) are required to provide a formal written notice pursuant to Section 13 of the Manufacturing Agreement and Section 9.8 of the APA in the event that goods shipped were non-conforming.

12.     Admits that Paragraph 12 of the Complaint accurately quotes limited portions of Sections 9(b) and 4(a) of the Manufacturing Agreement, and purports to

paraphrase Sections 4(a) and 9(b) of such agreement, but avers that, in accordance with Section 4(a) of the Manufacturing Agreement, Buyers are afforded the right -- "from time to time" -- to provide artwork and/or reference samples to Mainland from which Mainland shall produce "Development Samples" as a prelude to DPM LLC or Concept One placing Purchase Orders with Mainland, and refers to Sections 4(a) and 9(b) of such Agreement for their complete terms and conditions.

13.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint, except admits that Paragraph 13 accurately quotes a limited portion of Section 9(b) of the Manufacturing Agreement, and refers to Section 9(b) of the Manufacturing Agreement for its complete terms and conditions.

14.    Denies the allegations contained in Paragraph 14 of the Complaint, and refers to Section 4 of the Manufacturing Agreement for the process pursuant to which purchases are to be affected under the Manufacturing Agreement.

15.    Denies the allegations contained in Paragraph 15 of the Complaint, except admits those allegations to the extent they refer to Purchase Orders that have been "accepted" by Mainland in accordance with Section 4 of the Manufacturing Agreement.

16.    Denies the allegations contained in Paragraph 16 of the Complaint, except admits that Section 5 of the Manufacturing Agreement provides that, for each Purchase Order accepted by Mainland, Mainland will "deliver the Products to Buyers according to the "Ship By Date" specified in the Purchase Order", and avers that, while Section 9(c) of the Manufacturing Agreement contains the language quoted in Paragraph 16 of the

Complaint, Section 9(c) also provides that Mainland "will use its best efforts to deliver all confirmed orders on the dates set forth on the Purchase Orders."

17.    Admits that Paragraph 17 of the Complaint correctly quotes part of Section 9(d) of the Manufacturing Agreement, refers to Section 9(d) of the Manufacturing Agreement for its complete terms and conditions, and avers that Section 9(d) of the Manufacturing Agreement provides that, in the event the Buyers receive "defective Products", Mainland's obligation is to replace or allow Buyers credit up to the invoiced amount.

18.    Admits that Paragraph 18 of the Complaint correctly quotes a limited portion of Section 9(d) of the Manufacturing Agreement, refers to Section 9(d) of the Manufacturing Agreement for its complete terms and conditions, and avers that Section 9(d) of the Manufacturing Agreement also provides that, in the event Buyers receive "defective Products",  Mainland's obligation is to replace or allow Buyers credit up to the invoiced amount.

19.    Admits that Paragraph 19 of the Complaint quotes a limited portion of Section 9(d) of the Manufacturing Agreement and refers to Section 9(d) of the Manufacturing Agreement for its complete terms and conditions.

20.    Denies the allegations contained in Paragraph 20 of the Complaint, and refers to the Manufacturing Agreement for the complete terms and conditions of Mainland's obligations to the Buyers.

B.  The Dedicated Facility

21.    Denies the allegations contained in Paragraph 21 of the Complaint, and refers to Section 12 of the Manufacturing Agreement for the parties' obligations with respect to a temporary or permanent "separate manufacturing facility."

22.    Admits that Paragraph 22 of the Complaint purports to paraphrase certain privacy and exclusivity criteria, and refers to Section 12 of the Manufacturing Agreement and Exhibit B thereto for the complete terms and conditions of such Agreement with regard to the separate manufacturing facility.

23.    Admits the allegations contained in Paragraph 23 of the Complaint to the extent that, prior to executing the Manufacturing Agreement, the parties discussed constructing a separate manufacturing facility dedicated to the manufacture of Products for Concept One and DPM LLC in Panyu, Peoples Republic of China; and that Mainland was unable to obtain the required building permits for the Panyu facility from the Chinese authorities prior to the execution of the Manufacturing Agreement; and avers that, as a consequence, the parties agreed upon certain of the provisions set forth in Section 12 of the Manufacturing Agreement -- which Section, among other things, eliminated the exclusive use by the Buyers of a Dedicated Facility and a so-called Interim Dedicated Facility in the event "the [Buyers] purchase orders for any trailing three month period [were] less than 70% of the monthly average of the minimum purchase amount (Minimum Purchase Amount/12) set forth in Section 8(a)(ii) . …"

24.    Denies the allegations contained in Paragraph 24 of the Complaint, except admits that, pursuant to Section 12(a) of the Manufacturing Agreement, Mainland agreed

to build an Interim Dedicated Facility adjacent to Mainland's existing facility in Shenzhen in accordance with Section 12(a) of such Agreement.

25.     Admits the allegations contained in Paragraph 25 of the Complaint to the extent that, according to Section 12(a) of the Manufacturing Agreement, Buyers agreed to use the Interim Dedicated Facility on the condition that it be operated in accordance with the privacy and production exclusivity criteria "to be maintained for the permanent dedicated facility" as set forth in Exhibit B to the Manufacturing Agreement.

26.     Admits that Paragraph 26 of the Complaint purports to paraphrase Section 12(a) of the Manufacturing Agreement, but avers that Plaintiff has no right to terminate the Agreement.

### C.  Labor and Human Rights Standards

27.     Admits that Paragraph 27 of the Complaint purports to paraphrase a limited portion of Section 12(d) of the Manufacturing Agreement, and refers to Section 12(d) for its complete terms and conditions.

28.     Admits that Paragraph 28 of the Complaint purports to paraphrase a limited portion of Section 12(d) of the Manufacturing Agreement, and refers to Section 12(d) for its complete terms and conditions.

29.     Admits that Paragraph 29 of the Complaint quotes a limited portion of Section 12(d) of the Manufacturing Agreement, and refers to Section 12(d) for its complete terms and conditions.

30.     Admits that Paragraph 30 of the Complaint purports to paraphrase a portion of Section 12(c) of the Manufacturing Agreement, and refers to Section 12(c) for its complete terms and conditions.

D.     The Pricing Structure

31.     Admits that Paragraph 31 purports to paraphrase a portion of Section 6(a) of the Manufacturing Agreement, and refers to Section 6(a) for its complete terms and conditions.

THE BREACHES

32.     Denies the allegations contained in Paragraph 32 of the Complaint.

A .    Quality and Performance Standards

33.     Denies the allegations contained in Paragraph 33 of the Complaint.

34.     Denies the allegations contained in Paragraph 34 of the Complaint, except denies knowledge or information sufficient to form a belief as to truth or falsity of the allegation that Plaintiff sought to procure samples from two separate vendors.

35.     Denies the allegations contained in Paragraph 35 of the Complaint.

36.     Denies the allegations contained in Paragraph 36 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiff's success or failure with respect to specific selling programs.

37.     Denies the allegations contained in Paragraph 37 of the Complaint.

38.     Denies the allegations contained in Paragraph 38 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning complaints received by Plaintiff from its customers and Plaintiff's alleged good will with its customers, and avers that Buyers accepted the Products shipped to them by Mainland and did not provide "notice" in accordance with Section 13 of the

Manufacturing Agreement or Section 9.8 of the APA that Products shipped to them were non-conforming.

39.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 39 of the Complaint, and avers that the Buyers accepted Products shipped to them by Mainland and did not provide "notice" in accordance with Section 13 of the Manufacturing Agreement or Section 9.8 of the APA that Products shipped to them were non-conforming.

40.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 of the Complaint, except avers that, in accordance with Section 12(b) of the Manufacturing Agreement, Mainland was permitted to subcontract the manufacturer of knitted headwear without prior consent of the Buyers.

41.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 41 of the Complaint, except avers that, in accordance with Section 12(b) of the Manufacturing Agreement, Mainland was permitted to sub-contract knitted headwear without the prior consent of the Buyers.

42.    Denies the allegations contained in Paragraph 42 of the Complaint.

### B.  The Dedicated Facility

43.    Denies the allegations contained in Paragraph 43 of the Complaint that Mainland did not commence the building of the Interim Dedicated Facility, and avers that construction commenced in May 2007.

C.    Labor and Human Rights Standards

44.    Denies the allegations contained in Paragraph 44 of the Complaint, and avers that it was falsely alleged to have engaged in certain practices which affected its factories' ability to become qualified by certain of Plaintiff's licensors or customers.

45.    Denies the allegations contained in Paragraph 45 of the Complaint, except admits that at some time after Sears acquired K-Mart, K-Mart removed a Mainland-owned factory as an "approved" factory for one year from May 3, 2007, avers that the quantity of Products previously manufactured by Mainland for K-Mart was minimal, and avers that while Mainland was not initially approved for production of Levi's products, it is currently approved.

46.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 46 of the Complaint.

47.    Denies the allegations contained in Paragraph 47 of the Complaint, and avers that, on September 14, 2007, the President and CEO of Fair Labor Association ("FLA") wrote a letter advising that, despite misimpressions created by stories in the media, it conducted a review of Mainland's factory operations following alleged complaints in June 2007 about Mainland and that FLA found no issues with respect to child labor or other human rights violations, and that Mainland agreed to reduce the amount of overtime worked by employees.  A copy of the letter is annexed hereto as Exhibit 2.

48.    Denies the allegations contained in Paragraph 48 of the Complaint, and avers that, following a June 11, 2007 Wall Street Journal article about Mainland and other factories alleging concerns about child labor, paying less than minimum wage,

forcing overtime, penalizing staff who resign, and coaching workers on how to reply to outside auditors, several investigations were conducted, all of which resulted in findings favorable to Mainland.  Fair Labor Association published its findings in the September 14, 2007 letter referenced in Paragraph 47 above; the Beijing Olympic Committee restored Mainland's "full production rights"; and the Shenzhen Labor Authority issued a report (August 17, 2007) which found that the allegations in the purported June 2007 complaint were largely unsubstantiated.

49.    Denies the allegations contained in paragraph 49 of the Complaint.

50.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 50 of the Complaint, and avers that Plaintiff's reference to the unspecified "findings made against" Mainland may be based on nothing more than the false or misleading accusations referenced in Paragraphs 47 through 49 of the Complaint.  In fact, on July 27, 2007, Sam Hafif (President of Concept One) notified Vandana Balachandar of the National Basketball Association by email that, of the issues raised in a Wall Street Journal article dated June 11, 2007, the only issue potentially relevant to Mainland concerned overtime put in by its factory workers.  Based on an ITS audit conducted by Concept One, Hafif went on to advise "[o]verall, there is no difference between this factory and all of our other approved factories, actually they are better than most I've seen."

### D. The Pricing Structure

51.    Denies the allegations contained in Paragraph 51 of the Complaint.

## AS AND FOR A FIRST CLAIM

52.     In response to Paragraph 52 of the Complaint, Mainland repeats and reallleges its responses to Paragraphs 1 through 51 of the Complaint as if fully set forth hereat.

53.     Admits the allegations contained in Paragraph 53 of the Complaint.

54.     Denies the allegations contained in Paragraph 54 of the Complaint.

55.     Denies the allegations contained in Paragraph 55 of the Complaint.

56.     Denies the allegations contained in Paragraph 56 of the Complaint.

## AS AND FOR A SECOND CLAIM

57.     In response to Paragraph 57 of the Complaint, Mainland repeats and reallleges its responses to Paragraph 1 through 56 of the Complaint as if fully set forth hereat.

58.     Denies the allegations contained in Paragraph 58 of the Complaint except admits that an actual controversy and dispute exists with respect to the Manufacturing Agreement and the APA, and admits that Plaintiff purported to terminate the Manufacturing Agreement without grounds therefor.

59.     Denies the allegations contained in Paragraph 59 of the Complaint.

60.     Denies the allegations contained in Paragraph 60 of the Complaint.

## FIRST ADDITIONAL DEFENSE

61.     The Complaint fails to state a Cause of Action.

## SECOND ADDITIONAL DEFENSE

62.     Concept One's claims are barred under the doctrines of waiver and/or estoppel.

## THIRD ADDITIONAL DEFENSE

63.    From the time their payment obligations first became due, Buyers

continuously and consistently breached the Manufacturing Agreement.

On November 2, 2007, Mainland faxed formal written notice pursuant to

Section 7 of the Manufacturing Agreement advising Buyers of breaches of their payment

obligations under such Agreement and demanding that all accounts be brought current

within 30 days (i.e., on before December 2, 2007).  As of November 2, 2007, a "past due

balance in excess of $4.0 million" existed.

By December 3, 2007, balances in excess of $3.9 million remained.  Thus,

on December 5, 2007, and as a result of Buyers' substantial and continuing status of

arrears, Mainland faxed a written notice (i) apprising that Mainland had reasonable

grounds for insecurity as to Buyers' continued due performance under the Manufacturing

Agreement, (ii) demanding that Buyers perform their obligations under the

Manufacturing Agreement, and (iii) suspended performance under Section 7 of the

Manufacturing Agreement and the New York Uniform Commercial Code pending receipt

of such adequate assurances.

As of January 16, 2008, Buyers had an aggregate past due amount of

approximately $1.7 Million and had offered no assurances that, if Mainland were to

resume performance, they would comply with the terms of the Manufacturing

Agreement.

Concept One's and DPM LLC's material breaches of the Manufacturing

Agreement, including but not limited to their continuing failure to comply with payment

terms, excused Mainland's performance under the Manufacturing Agreement.

<u>FOURTH ADDITIONAL DEFENSE</u>

64.     Concept One and DPM LLC failed to order Products in the quantities

specified in Section 8 of the Manufacturing Agreement and as guaranteed in the APA,

despite the fact that Mainland had the production capability to manufacture Products in

the volumes specified in Section 8.

In fact, during the "First Annual Period" (May 1, 2007 through April 30,

2008) Buyers purchased approximately $4.6 Million worth of Products (some of which

they are yet to pay for), despite the requirement in Section 8(a) of the Manufacturing

Agreement that they purchase at a minimum $20 Million worth of Products or 65% of

their world-wide purchases of Products within Mainland's production capability,

whichever amount is lower.

Upon information and belief, Concept One and DPM LLC ordered

Products from many factories in China other than Mainland, including Products within

Mainland's production capability.

Concept One's and DPM LLC's failure to comply with the Manufacturing

Agreement's minimum purchase obligations under Section 8 of the Manufacturing

Agreement excused Mainland's further performance thereunder.

<u>FIFTH ADDITIONAL DEFENSE</u>

65.     Section 9(a) of the Manufacturing Agreement affords Concept One and

DPM LLC the remedy of renegotiating the minimum purchase requirements set forth in

Section 8 of such Agreement and effecting an "equitable adjustment," in the events that

(i) Mainland "consistently and continuously" fails to comply with Section 9 of the

Manufacturing Agreement or other provisions of the Agreements, (ii) such "consistent

and continuous" breach "has a material and adverse effect" on the business of Concept

One and DPM LLC, provided that (iii) Mainland has received written notice of such

breach or breaches (in accordance with Section 13 of the Manufacturing Agreement and

Section 9.8 of the APA), and (iv) the breach or breaches so noticed are not cured within

three months of such written notice.

Concept One demanded a renegotiation of the minimum purchase

requirements in a writing sent on October 29, 2007 despite the facts that (i) Mainland did

not "consistently or continuously" breach the Manufacturing Agreement, and (ii) the

"notice" received from Concept One (a) failed to specify the breaches about which

Concept One complained and (b) failed to provide Mainland with the contractually

required three month cure period.

Concept One and DPM LLC failed to comply with the Manufacturing

Agreement's notice and opportunity to cure provisions as conditions precedent to an

equitable adjustment of their minimum purchase requirements.

<u>SIXTH ADDITIONAL DEFENSE</u>

66.    Concept One and DPM LLC anticipatorily repudiated the Manufacturing

Agreement, through conduct including but not limited to their:  (a) material and

continuous failure to comply with the Manufacturing Agreement's payment and

minimum purchase provisions; (b) improper demands to renegotiate the Manufacturing

Agreement's minimum purchase requirements; (c) stated intentions not to place orders;

(d) failure to provide adequate assurances of due performance upon notice that reasonable

grounds for Mainland's insecurity existed; and (e) stated intention to improperly

terminate the Manufacturing Agreement.  Concept One's and DPM LLC's anticipatory

repudiation of the Manufacturing Agreement permitted Mainland to suspend its

performance, thereby excusing Mainland's continued performance under the

Manufacturing Agreement.

SEVENTH ADDITIONAL DEFENSE

67.    Concept One and DPM LLC failed to exercise good faith and fair dealing

and/or commercial reasonableness in requesting Development Samples pursuant to the

Manufacturing Agreement.  Such unreasonable demands constituted a material breach of

the Manufacturing Agreement, thereby excusing Mainland's performance, and, upon

information and belief, such unreasonable demands were a pretextual attempt by Concept

One and DPM LLC to induce a breach on the part of Mainland so that Concept One and

DPM LLC could improperly manufacture a basis for terminating the Manufacturing

Agreement.

EIGHTH ADDITIONAL DEFENSE

68.    Mainland's obligation – if any – to build an Interim Dedicated Facility by

December 29, 2007 – or any time thereafter – was excused by the breaches of the

Manufacturing Agreement and the APA by Concept One and DPM LLC, which breaches

included but were not limited to (i) failing to make timely payment for Products shipped

and accepted, (ii) failing to provide adequate assurances of performance, and (iii) failing

to place orders in quantities sufficient to merit an exclusive facility as provided for in

Section 12(a) of the Manufacturing Agreement.

NINTH ADDITIONAL DEFENSE

69.    Concept One's alleged damages are barred and/or should be reduced to the

extent Concept One failed to mitigate its damages.

<u>TENTH ADDITIONAL DEFENSE</u>

70.     The claims that Mainland violated labor and human rights standards were demonstrated to be false following investigations in 2007 by, or on behalf, of Fair Labor Association, the Chinese Province of Shenzhen, and the Beijing Olympic Committee.

In fact, on July 27, 2007, Sam Hafif (President of Concept One) notified Vandana Balachandar of the National Basketball Association by email that, of the issues raised in a Wall Street Journal article dated June 11, 2007, the only issue relevant to Mainland concerned overtime put in by its factory workers. Based on an ITS audit conducted by Concept One, Hafif went on to advise Balachandar that "[o]verall, there is no difference between this factory and all of our other approved factories, actually they are better than most I've seen."

Concept One is, therefore, estopped from asserting claims with respect to alleged labor and human rights standards.

<u>ELEVENTH ADDITIONAL DEFENSE</u>

71.     Concept One's claims with respect to Mainland's inability to produce certain knitwear (such as found in Paragraphs 40-41 of the Complaint) are barred pursuant to the Manufacturing Agreement, which expressly permitted Mainland to subcontract such work without the prior consent of Concept One or DPM LLC.

<u>TWELFTH ADDITIONAL DEFENSE</u>

72.     Concept One's and DPM LLC's complaints about price affected product styles that are not governed by the Manufacturing Agreement.

THIRTEENTH ADDITIONAL DEFENSE

73.     Concept One and DPM LLC accepted the Products shipped to them by Mainland and did not provide adequate notice that any such Products were non-conforming.

FOURTEENTH ADDITIONAL DEFENSE

74.     The law of the Province in which Mainland operated permitted 60 hours of overtime per month whereas the County law permitted only 36 hours, subject to a waiver. Mainland had applied for and received the waiver in years prior to 2007 and was unaware of any change in the eligibility or issuance of such a waiver.

FIFTEENTH ADDITIONAL DEFENSE

75.     Concept One's claims of breach are not material.

COUNTERCLAIM

76.     Mainland has claims against Buyers, Concept One and DPM LLC that arise out of the transaction that is the subject matter of the Complaint to which this Answer responds.

77.     Mainland has, however, previously set forth such claims in a Complaint currently before this Court, i.e., Mainland Headwear Holdings, Ltd. v. Drew Pearson Marketing, LLC and USPA Accessories LLC d/b/a Concept One, 08 CV 02363 (RJS). For this reason, no separate Counterclaim will be asserted herein.

WHEREFORE, Mainland Headwear Holdings, Ltd. demands that the Complaint be dismissed in its entirety with attorneys' fees and costs awarded to it along with such other and further relief as this Court may deem just and proper.

Dated:  May 16, 2008

Respectfully submitted,

WORMSER, KIELY, GALEF & JACOBS LLP

By:_____/s/_____

John T. Morin (JM 0390)
Jennifer Marlborough (JM 4303)
Attorney for Defendants
825 Third Avenue
New York, New York 10022
(212) 687-4900

Of Counsel

Bell Boyd & Lloyd LLP
70 West Madison Street – Suite 3100
Chicago, IL 60602
(312) 372-1121